UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00703-WYD

GRETCHEN K. WEGNER,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

_____

**ORDER**

_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-33 and 1380-83.  Plaintiff asserts that the decision of the Commissioner is not supported by substantial evidence and must be reversed or benefits should be awarded outright.  For the reasons stated below, this case is reversed.

Plaintiff was 44 years old at the time of her first application protectively filed on September 25, 2003 (Transcript ["Tr."] 40), and age 47 at the time of the second hearing before the Commissioner.  She served in the United States military in Desert Storm between November 1990 and March 1991.  Wegner alleged that she became disabled on May 14, 2003 due to chronic fatigue, tremors, disorientation, numbness in hands, loss of motor skills and depression.  (*Id.* 59).  Plaintiff's treating physician Dr. Brassard

opined that Plaintiff had "chronic fatigue syndrome undiagnosable Gulf War syndrome." (*Id.* 192).

Plaintiff's claim was denied initially on December 30, 2003. (Tr. 36-39.) Plaintiff requested a hearing, and a hearing was held on January 25, 2005, before an Administrative Law Judge ["ALJ"]. (*Id.* 465-507.) In a decision dated April 26, 2005, the ALJ issued a decision denying Plaintiff's claim at step four on the basis that she was not disabled within the meaning of the Social Security Act. (*Id.* 18-24.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (*Id.* 7-11.) Plaintiff then appealed to this Court and the case was assigned to me.

In March 2007, I remanded the case for further administrative proceedings. (Tr. 542-64.) I found that the ALJ erred in connection with: (1) his assessment of Plaintiff's carpal tunnel syndrome, (2) the residual functional assessment ["RFC"], (3) not considering the Veteran Administration's ["VA"] determination that Plaintiff was disabled; (4) weighing the evidence and not applying the treating physician rule appropriately, and (5) finding that the RFC assessment of the State Agency Disability Examiner was consistent with the record as a whole. (*Id.* 542-554.) As to Dr. Brassard, my Order stated that the ALJ improperly discounted his physical capacities evaluation: (1) because he rested his decision in part on a finding that there were no neurological tests to support Plaintiff's chronic fatigue syndrome ["CFS"], when in fact there are not laboratory tests that diagnose CFS, and (2) based on the ALJ's credibility judgment regarding Plaintiff's testimony. (*Id.* 552-53.)

I also found that the ALJ did not adequately develop the record as he did not identify how the evidence supported his RFC, explain why he did not include any mental

-2-

impairments in the RFC, or take into account Plaintiff's physical impairments from her CFS. (Tr. 554-55.) The Order stated that if the ALJ was not able to obtain his own experts on the issue of the limitations of Plaintiff's CFS, he was required to contact the treating physician to determine his opinion on this issue. (*Id.* 555.) Finally, I found that the ALJ erred in assessing Plaintiff's credibility, and that the hypothetical question may not have included all of Plaintiff's impairments. (*Id.* 555-56.)

After a supplemental hearing (Tr. 770-801), the ALJ again denied Plaintiff's claim, this time finding at step five that she was not disabled. (*Id.* 511-22.) Plaintiff requested judicial review, and this appeal followed.

II.     ANALYSIS

A.     The ALJ's Supplemental Decision

The ALJ found at step one that Plaintiff's insured status would extend through December 31, 2008. (Tr. 513.) He further found that Plaintiff had not engaged in substantial gainful activity ["SGA"] since May 14, 2003, the alleged onset date. (*Id.*)

At step two, the ALJ found that Plaintiff had severe impairments of: "chronic fatigue syndrome, depressive disorder, general anxiety disorder, and undifferentiated somatoform disorder". (Tr. 513.) At step three, he found that Plaintiff's impairments did not meet or medically equal one of the listed impairments. (*Id.* at 514-16.)

The ALJ found that Plaintiff has the RFC "to perform a range of sedentary exertional work, while sitting or standing/walking for up to four hours each in a regular eight hour work day, with the option to alternate positions; lifting/carrying and occasionally pushing/pulling up to five pounds; while avoiding using her feet to operate foot controls; with restriction on exposure to environmental hazards . . . .; and while only

-3-

occasionally engaging in postural activities, climbing, gross manipulation, and overhead reaching." (Tr. 516.)  Further, "due to the ongoing effects of her psychologically based symptoms, the claimant should avoid jobs involving more complex instructions, and would thus be limited to performing unskilled or semi-skilled jobs." (*Id.*)

In making this assessment, the ALJ gave great weight to treating physician Dr. Brassman's function by function analysis, but no weight to his opinion that Plaintiff cannot work. (Tr. 519.)  The ALJ gave "little weight" to the opinions by the VA, including treating physician Dr. Jacobs, that Plaintiff is not able to work based on her functional limitations. (*Id.* at 519-20.)

The ALJ also found that Plaintiff was not a credible witness. (Tr. 519.)  This was due to "the lack of objective medical evidentiary support for the severity of impairments the claimant alleges; her acknowledged lack of need for ongoing psychological counseling and medication, or of prescription pain medication; the documented instances of symptom exaggeration; and the inconsistencies between her allegations of such limiting symptoms and her description of her activity level." (*Id.*)

At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work. (Tr. 520-21.)  This is because Plaintiff's past work "is all performed at the light exertional level or greater." (*Id.* 520.)  Finally, at step five, the ALJ found that considering Plaintiff's age, education (high school), work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* 521.)  Relying on the testimony of a vocational expert, the ALJ found that Plaintiff would be able to perform "representative occupations" such as telemarketer, telephone

quotation clerk, and private dispatcher.  (*Id.*)  Accordingly, the ALJ found that Plaintiff is not disabled.  (*Id.* 522.)

### B.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### C.   Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff argues that the ALJ's supplemental opinion wherein he rejected multiple treatment providers' opinions that Plaintiff cannot hold full-time work and cherry-picked their opinions violated the medical opinion standards.  She also argues that the ALJ's failure to properly evaluate the medical opinion evidence infected his RFC evaluation, since the treating physicians and VA providers concluded that Plaintiff's CFS was at a level of impairment that precluded substantial gainful activity ["SGA"].  Finally, it is

argued that the ALJ did not establish his burden at step five because the hypothetical question did not include all of Plaintiff's impairments.  I address these arguments below.

### 1.   Whether the ALJ Violated the Medical Opinion Standards

Plaintiff asserts that the ALJ's flawed reasoning for rejecting multiple treatment providers' opinions that she cannot hold full-time work violated the medical opinion rules.  Under those rules, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it."  *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994) (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)).  "An ALJ must first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citing SSR 96-2p, 1996 WL 374188, at *2 (further quotations omitted)).  "If the answer to this question is 'no,' then the inquiry at this stage is complete."  *Id*.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record."  *Id*.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Id*.

"When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around."  *Goatcher*, 52 F.3d at 290 (quotation omitted).  "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Id*.  In addition, the ALJ must consider certain factors to determine what weight to give any medical opinion.  *Id*. (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

Turning to my analysis, I held in my 2007 ruling that the ALJ erred as follows:

The ALJ's decision illustrates that the ALJ improperly rested his decision in part on a finding that there were no neurological tests to support Plaintiffs claim of CFS.  As the court recognized in *Sisco v. U.S Dept. of Health*, 10 F.3d 739, 744 (10th Cir. 1993), there is no laboratory test for CFS.  See also SSR 99-2p.  Accordingly, it was error for the ALJ to discount Dr. Brassfield's assessment of the severity of plaintiff's CFS based on negative test results.

(Tr. 553).

The ALJ acknowledged that the case was back before him pursuant to my remand order (Tr. 511) and acknowledged the fact that "CFS is an impairment for which no specific etiology or pathology has yet been established, and it is also an impairment which can be diagnosed based solely on an individual's reported symptoms" (*id.* 513), in accord with *Sisco*.  Thus, he stated that he accepted the CFS diagnosis by Plaintiff's physician at step two, finding it to be a severe impairment.  (*Id.* 513-14.)  Nonetheless, I agree with Plaintiff that the ALJ then proceeded to ignore my remand order and violate the rule in *Sisco* when it came to weighing the medical evidence and in his determinations at steps three through five.

Specifically, while the ALJ acknowledged that Plaintiff complained her CFS was one of her major obstacles to sustaining any level of work activity (*id.* 517), he did not assess any impairments from CFS despite the clear directive in my remand order that he must take into account Plaintiff's physical impairments from that syndrome.  (Tr. 554-55.)  The ALJ's decision in this regard was clearly based on the fact that there were no objective findings related to this diagnosis.  For example, the ALJ stated:

[O]f interest, this source also noted that upon examination, the claimant exhibited normal muscle bulk and tone of the arms and legs; normal muscle strength in all muscle groups in her limbs; no fasciculations or involuntary

movements; no tremor at rest in either arms or legs; and that the claimant was able to perform rapid alternating movement with the arms and fingers normally; to walk on heels and toes normally; and that she exhibited normal casual gait. (Exhibit 14F). Considering the lack of objective medical evidentiary support for the severity of impairment the claimant alleges ... the undersigned finds that the claimant is not a credible witness.

(*Id.* 518-519).

Further, in adopting Dr. Brassfield's assessment of RFC, the ALJ stated:

the undersigned gives the claimant considerable benefit of the doubt regarding her allegation of her ongoing symptoms, as the medical evidence, as discussed above, contains numerous references to the claimant's normal results on repeated physical and neurological examinations, including findings of normal sensation and reflexes, normal motor strength in all muscle groups, and with no detectable neurological deficits. (Exhibits 5F, 6F, 8F, 11F, 13F and 14F).

(Tr. 519.) The ALJ also stated:

that (Dr. Jacobs') assessment noted that the claimant's motor and sensory examinations were normal, that the claimant's reflexes were symmetrical, and that she exhibited a normal gait.

\* \* \* \* \*

Considering the lack of supportive examination evidence, the undersigned is unable to give Dr. Jacobs' opinion controlling weight.

(Tr. 520.) Finally, the ALJ stated on this issue that "Dr. Johnston-Brooks noted that there was no concrete medical diagnosis to support the degree to which she was allegedly disabled by a disease process." (Tr. 518.)

The foregoing demonstrates that the ALJ discounted Plaintiff's symptoms and impairments from her CFS and the medical evidence from treating physicians that supported those impairments because, at least in part, he found they were not supported by objective findings on examination. This was a clear violation of *Sisco* as well as my remand order. Further, it is an improper attempt by the ALJ "to substitute his

lay judgment for that of Congress, [the physicians], and the entire medical community" regarding the manner in which CFS is diagnosed.  *Sisco*, 10 F.3d at 744.   Similarly, the ALJ erred when he rejected the opinions of treating providers Brassfield, Jacobs and Johnson-Brooks that Plaintiff could not work and Jacobs' work evaluation to the extent their opinions regarding Plaintiff's CFS were not supported by objective medical tests.[1]

The ALJ also erred when he discounted Plaintiff's subjective complaints regarding CFS as not credible because of "the lack of objective medical evidentiary support for the severity of impairment the claimant alleges".  (Tr. at 519.)  *Sisco*, 10 F.3d at 743-44; *see also Phillips v. Chater*, No. 95-7060, 1996 WL 60469, at *3 (10th Cir. 1996) (ALJ erred in discounting plaintiff's subjective complaints as to headaches based on lack of clinical or diagnostic findings supporting his claims, as this was "an improper basis for discrediting a claimant's uncontroverted testimony").[2]  Indeed, Plaintiff's "subjective complaints are consistent with the symptomatology for CFS recognized by the Commissioner, are documented in medical records, and are corroborated by testimony from family members." *Vogt v. Chater*, 958 F. Supp. 537, 547 (D. Kan. 1997). Accordingly, this was an improper basis for finding that Plaintiff was not credible.[3]

---

[1]   While the ALJ stated that he gave these assessments "little weight" (Tr. 519-20), it appears that he gave them no weight.  The ALJ erred in not articulating the actual weight that he gave to these opinions.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  In other words, a finding of "little weight" does not allow me to determine what actual weight, if any, the ALJ gave these opinions.

[2]   Citations to this and other unpublished opinions in this Order are made because I find that the opinions have persuasive value with respect to a material issue that has not been addressed in a published opinion.

[3]   The Commissioner also points to the normal objective findings by many doctors and argues that this can be taken into account.  However, as *Sisco* pointed out, "because chronic fatigue syndrome is diagnosed partially through a process of elimination, an extended medical history of 'nothing-wrong"

I also find that the ALJ continued to wrongly reject medical evidence based on his credibility judgment of Plaintiff.  My remand Order stated on this issue:

> Further, it was error for the ALJ to reject Dr. Brassfield's assessment based on the ALJ's credibility judgment regarding Plaintiff's testimony. The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion.'"  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).

(Tr. 553.)

For example, the ALJ rejected treating physician Jacobs' work evaluation which found that Wegner could not perform full-time work in part due to his credibility judgment.  Specifically, he stated:

> Furthermore, considering the claimant's testimony regarding her activities of daily living, her tendency to exaggerate the extent of her symptoms. . . the undersigned gives little weight to [Jacobs'] conclusion that the claimant is so extensively limited in her ability to sustain work-related activities.

(Tr. 520).

The ALJ also made a comment at the hearing which tends to support Plaintiff's argument that the ALJ rejected or gave little weight to other medical evidence based on his credibility judgment.  Specifically, the ALJ stated:

> Q: One of the problems, you know, we have in this thing is the following, that is, you know, there were several places in here where doctors didn't really believe you too much. Now, they said the testing was consistent with intentional, conscious exaggeration of symptoms, blah, blah, blah. It goes on and on. And that was the good guy. That was your guy so. And one of them

---

diagnoses is not unusual for a patient who is ultimately found to be suffering from the disease." *Sisco*, 10 F.3d at 745.  Further, the Commissioner makes the same mistake as the ALJ in misconstruing the nature of CFS.

> at the VA said the same thing so when I read all those things, I think you're pulling my leg to some extent so I have to consider comments like that.

(Tr. 778.)  This shows that the ALJ felt as though Plaintiff was pulling his leg, and that he may have made this credibility judgment before evaluating the opinion evidence in his decision.  In so doing,  the ALJ violated my remand order and the Tenth Circuit's opinion in *Langley*.  *See also Goatcher*, 52 F.3d at 290 (other evidence is weighed "to see if it out weighs the treating physician's report, not the other way around").

Further, it appears the ALJ accepted only the parts of medical opinions favorable to the Commissioner, and discarded other parts of their opinions.  This is improper.  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 (10th Cir. 2004).  The ALJ wrote, "Clearly, Dr. Brassfield's assessment would allow for some level of work activity, albeit at a significantly reduced level."  (Tr. 519).  This finding regarding Plaintiff's work level appears to be consistent with the medical evidence.  In June 2003, Dr. Brassfield opined that Plaintiff would not be able to return to work (*id.* 196), and that she could not safely walk or stand (*id.*).  Further, his medical notes reflect Plaintiff's complaints of extreme fatigue requiring frequent naps.  (*Id.* 191-192, 194.)  This is precisely the "significantly reduced level" of functioning that the ALJ recognized.  (*Id.* 519.)  However, the ALJ then went on to find that Plaintiff was able to work full time eight hours a day, five days a week, which clearly does not provide for reduced functioning.   By accepting some of Dr. Brassfield's opinions but giving "little  weight" to other parts of his opinion, the ALJ's decision was not supported by substantial evidence.[4]

---

[4]  I further note that the ALJ did not refer to or discuss Dr. Brassman's opinions in his treatment notes, focusing only on his function by function assessment and his statement about Plaintiff's ability to work.  The ALJ must, however, consider all of the medical evidence from a treating physician and state

Similarly, the ALJ cherry-picked treating psychologist Johnson-Brook's opinion (Tr. 285-295), relying upon a reference within the report to reduced effort (which could well have been caused by her fatigue) and negative validity test scores.  The ALJ ignored, however, Johnson-Brook's overall interpretation of the evaluation wherein she found that Plaintiff's "present presentation suggests she is not employable", diagnosed Plaintiff with Undifferentiated Somatoform Disorder; Major Depressive Disorder, recurrent, severe; chronic fatigue syndrome and other impairments, and assessed Plaintiff with a GAF of 35, indicative of "Major impairment in several areas, such as work, family relations, thinking and mood."  (*Id.* 295.)[5]  The ALJ's decision not to give weight to Johnson-Brooks' assessment because of reports of reduced effort in the body of the opinion is an improper substitution of the ALJ's judgment.  *See Teter v. Heckler*, 775 F.2d 1104, 1106-07 (10th Cir. 1985).[6]

The ALJ also made improper lay opinions when he found that Johnson-Brooks' assessment was "inconsistent with the evidence of record" because of Plaintiff's testimony about her ability to engage in routine household chores and to shop and that

---

what weight he is giving that evidence.  The ALJ erred since I am unable to determine what weight, if any, the ALJ gave this other evidence.  Finally, to the extent Dr. Brassman's functional assessment may have been inconsistent with his treatment notes and finding that Plaintiff could not work, the ALJ should have contacted Dr. Brassman for clarification of the issue.  *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

[5]  "'The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.'"  *Lee*,  2004 WL 2810224, at *3 (quoting *Langley*, 373 F.3d at 1122 n. 3).  Standing alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work."  *Id.*  "A GAF score of fifty or less, however, does suggest an inability to keep a job" and should be considered by the ALJ.  *Id.*

[6]  Further, the ALJ ignored other evidence in the record from a treating physician which expressly stated that Plaintiff was not malingering.  (*Id.* 767.)

-12-

she has friends and gets along with others and that Plaintiff had only moderate limitations based on these activities.  (Tr. 520, 515.)  The same is true as to the ALJ's statement, "Additionally, considering her lack of need for psychological care, and her description of her ability to interact well with others, and to perform routine daily activities, the evidence does not support that her psychological impairments result in any significant functional impairments beyond her inability to deal with skilled work, which involves understanding, remembering, and carrying out detailed instructions." (*Id.*)

From the foregoing, the ALJ rejected medical opinions based on his own judgment that Plaintiff's ability to engage in certain activities meant that the medical opinions were erroneous.  This is clear error.  *Langley*, 373 F.3d at 1121; *see also Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (a medical doctors's statements about a claimant's condition or impairments "are specific medical findings" and the ALJ errs in rejecting those opinions in the absence of conflicting evidence).

Finally, I agree with Plaintiff that the ALJ failed to weigh the consistency in the medical evidence.  *Watkins v. Barnhart*, 350 F.3d 1297,  1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2).  Both treating physicians that assessed Plaintiff's CFS found that she could not work.  The ALJ did not show that there was substantial evidence to the contrary in the record.  Plaintiff's inability to work was also backed up by psychologist Johnson-Brooks' opinion, which was generally consistent with that of licensed marriage and family therapist Jan Bloise (Tr. 236) and Stephen Reich, Ph.D.

(*id.* 461-462).[7]   The VA also found that Plaintiff was disabled, consistent with the treating physicians' assessment.   Further, the ALJ failed to weigh the appropriate factors as to the treating physicians.   Accordingly, I find that the ALJ to properly weigh the medical evidence.

## 2.   Whether the ALJ Failed to Properly Evaluate Plaintiff's RFC

I also find that the ALJ's failure to properly evaluate the medical opinion evidence infected his RFC evaluation.   RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.   Soc. Sec R. 96-8p(1), 1996 WL 374184, at *1; *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citing 20 C.F.R. § 416.945(c)).   A "regular and continuing basis" means "'8 hours a day, for 5 days a week, or an equivalent work schedule,' S.S.R.  96-8p, 1996 WL 374184, at *2, and the ability to 'respond appropriately to supervision, coworkers, and customary work pressures in a routine work setting,' S.S.R. 86-8, 1996 WL 68636, at *5."   *Haga,* 482 F.3d at 1208.   Thus, "'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that [s]he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job [s]he finds for a significant period of time.'"   *Washington*, 37 F.3d at 1442 (emphasis in original) (quotation omitted).

---

[7]   As to Plaintiff's mental impairments, even consultative examiner Dr. R. Terry Jones assessed a GAF of 60, indicative of moderate symptoms.  (*Id.* 242.)  Nonexamining state agency psychiatrist Dr. Ziomek also found that Plaintiff had certain moderate impairments, including an impairment in maintaining concentration, persistence, or pace.  (*Id.* 103-05.)  The Tenth Circuit has made clear that the existence of even a moderate impairment is not the same as no impairment at all.  *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).

In this case, as noted above, the treating physicians and the VA concluded that Wegner's CFS and/or psychological symptoms were at a level of impairment that precluded SGA.  Indeed, the VA found that Plaintiff was disabled.  The ALJ failed to acknowledge that the "significantly reduced level" of RFC noted by the ALJ and depicted by Drs. Brassfield, and Jacobs and the VA does not support a finding of SGA.

Further, the ALJ used language in the body of the decision indicating that he did not recognize the correct SGA standard.  For example, he found that the claimant is not credible "in claiming total disability from any work activity."  (Tr. 519.)  He also stated that he gave "little weight to any determination which suggests an inability to sustain any level of physical, work-related activities throughout a normal work schedule."  (*Id.*)  See *Ricketts v. Apfel*, 16 F. Supp. 2d 1280, 1295-96 (D. Colo. 1998) (The ALJ's all work activity standard is incorrect.)  Finally, as noted above, the ALJ gave Dr. Brassfield's work capacity assessment great weight, even though he found that the assessment provided for a "significantly reduced level" of work activity.  (*Id.*)

I also find that the ALJ erred in connection with his RFC assessment of Plaintiff's mental impairments.  "When a claimant suffers from a severe mental impairment that does not meet or equal the criteria of the listings. . . , '[t]he determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity.'"  *Washington*, 37 F.3d at 1440 (quotation omitted).  "In assessing a claimant's mental RFC, the ALJ should consider the claimant's ability to engage in the activities of daily living; to interact appropriately with the public, supervisors, and co-workers; to focus long enough to complete tasks in a timely fashion; and to adapt to

stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder." *Id.*

In this case, the ALJ did not assess the above issues or address other mental impairments supported by the medical evidence. Indeed, that evidence supported the existence of moderate to severe impairments from Plaintiff's mental health diagnoses, as detailed above. Instead, the ALJ made his own improper lay judgment that because of Plaintiff's lack of psychological care, ability to interact well with others and to perform certain routine daily activities, "the evidence does not support that her psychological impairments result in any significant functional impairments beyond the inability to deal with skilled work, which involves understanding, remembering and carrying out detailed instructions." (Tr. 520.) This was error. *Langley*, 373 F.3d at 1121; *see also Flynn v. Astrue,* 513 F.3d 788, 792 (8th Cir. 2008) (the ALJ's determination of a claimant's RFC "'must be supported by some medical evidence of the claimant's ability to function in the workplace'") (quotation omitted); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (although the final determination of RFC is left to the Commissioner, the Commissioner must defer to a treating physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions").

I find other errors with the ALJ's opinion about Plaintiff's mental RFC. First, the ALJ relied on Plaintiff's lack of psychological treatment as a basis to find her not credible and to minimize her mental health impairments. This was an improper lay judgment that is not supported by substantial evidence since every mental health provider that examined Plaintiff diagnosed moderate to severe impairments. The ALJ

cannot use lack of treatment to support his findings when the medical evidence actually supports Plaintiff's testimony about her impairments.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083-84 (10th Cir. 2004) (the ALJ erred in rejecting a treating physician's opinion based on his own speculative lay opinion that claimant failed to comply with prescribed treatment where there was no evidence in the record that the doctor "ever expressed or suggested such an opinion" and the doctor's treatment notes did not indicate that he believed that claimant was sufficiently stable to return to work even when on medication).  Further, the ALJ chose to use Plaintiff's lack of treatment as a basis to find her not credible despite the fact that he had previously noted in his decision that Plaintiff testified she could not afford to get treatment for her impairments (Tr. 518, 482) and that she stopped taking medication for her psychologically based symptoms because she felt the medication made her worse.  (*Id.* 517).  These are factors that should have been weighed in connection with the credibility analysis.[8]

Second, as noted above, the ALJ also found Plaintiff was not credible based on her daily activities.  (Tr. 520.)  While daily activities certainly may be considered in connection with a credibility analysis, "sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity."  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (citing *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983)); *see also Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987) ("limited activities in

---

[8]  Moreover, claimants who are depressed may seek to get adequate psychological care because of the very nature of their mental impairment.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("'[a]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation'") (quotation omitted) (cited in *Allen v. Apfel*, No. 99-3249, 2000 WL 796081, at *4 (10th Cir. 2000) (unpublished)).

themselves do not establish that one can engage in light or sedentary work activity").

Similarly, "the ALJ may not rely on minimal daily activities as substantial evidence that a

claimant does not suffer disabling pain", as the ALJ did here. (Tr. 518). *See Thompson

v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

Further, the ALJ did not accurately recount Plaintiff's testimony about her

activities. Both Plaintiff and her husband testified that Plaintiff engaged in only very

minimal activities, and that while Plaintiff helps with the housework, her husband does

most of the work. (Tr. 490, 497.) This is supported by medical evidence. (*Id.* 290.)

Plaintiff also testified that her other activities are extremely limited due to fatigue and

other symptoms and that she has good days and bad days when she cannot do

anything, which the ALJ did not properly take into account in his analysis. (*Id.* 488-93.)

The ALJ also did not properly take into account Plaintiff's fatigue, pain, and other

impairments clearly supported by the record in connection with assessing the RFC. The

medical evidence is replete with findings of muscle pain and extreme fatigue which

causes Plaintiff to have to take frequent naps, to sometimes be completely

incapacitated, and which limits her ability to engage in activity. (Tr. 182, 185-86, 192,

194, 236, 239, 294, 462, 766-69). The ALJ discounted those impairments and did not

include them in his RFC, in part because of his mistaken assumption that these

impairments had to be supported by objective evidence, as discussed in the previous

section. I find that this was legal error. *See Romero v. Astrue*, No. 06-6305, 2007 WL

2110899, at *2 (10th Cir. 2007) (unpublished) ("Dr. Haddock's conclusions concerning

Ms. Romero's pain and limitation. . . find support in the treatment records and therefore

could not be cursorily dismissed for the reason the ALJ gave: lack of medical evidence.

The record is replete with evidence that Ms. Romero experiences difficulties with both standing and walking. . . .")

The ALJ also ignored other impairments supported by the record, including the fact that Plaintiff has good days and bad days (Tr. 769, 781-82), that she suffers from dizziness/balance problems and numbness in her hands (*id.* 186, 194, 294, 298, 654, 713, 743, 751), blurred vision (230, 286, 294), stress intolerance (*id.* 59, 134, 136, 221, 241, 278, 357, 481, 767), tinnitus (*id.* 666, 673, 743), difficulty with walking and standing (*id.* 768), impaired memory and concentration problems (*id.* 103-05, 236, 461-62), and anxiety problems (*id.* 134, 143, 190, 236, 267, 278-279).  Many of these symptoms appear to be consistent with her diagnosis of CFS.  *See* http://www.mayoclinic.com/health/chronic-fatigue-syndrome/ds00395/dsection= symptoms.

Further, there is evidence in the record that there is a need for long-term psychology to improve (*id.* 295), that Plaintiff may have excessive absenteeism from work (*id.* 769) and crying spells (*id.* 240, 287, 298), and that she has a limited ability to drive (*id.* 652, 784-785).  The ALJ should also have considered Wegner's inability to even consistently work out at the swimming pool (*id.* 764-765, 793-794), to be able to do a volunteer job consistently even two hours twice a week (*id.* 790-791) or to be able at times to take her child to school (*id.* 475).  *See Talbot*, 814 F.2d at 1462-63.

Finally, I previously held in my remand order that "it is error for the ALJ not to at least consider Plaintiff's work history in his analysis of Plaintiff's credibility."  (Tr. 556.) The ALJ again failed to do that in his current opinion, despite the fact that Plaintiff had a "good work history."  (*Id.* 637-641.)  *See Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D.

Colo. 2000) (where a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work.)

      3.   <u>Whether the ALJ Met His Burden at Step Five of the Sequential Evaluation</u>

The errors discussed above also tainted the step-five evaluation in this case. Plaintiff's impairments were not properly considered by the ALJ, which obviously impacts the validity of the hypothetical question.  Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision.  *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993).  An impairment does not have to be disabling in order to warrant inclusion in the hypothetical.  *Culler v. Massanari*, No. 00-3163, 2001 WL 540388, at *3 (10th Cir. 2001) (unpublished).  Instead, an impairment must be included in the hypothetical given to the VE if it is severe, *i.e.*, if it significantly limits the plaintiff's ability to do basic work activities.  *Id.* (citing 20 C.F.R. § 404.1520(c)).

I further find that the actual hypothetical posed by the ALJ to the vocational expert did not even include all of the impairments in the ALJ's RFC.  For example, the ALJ found in his RFC that Plaintiff should avoid jobs involving more complex instructions, and would thus be limited to performing unskilled or semi-skilled jobs.  (Tr. 516.)  This was not included in the hypothetical question.  (*Id.* 799.)  Accordingly, the hypothetical question was improper and the ALJ was not entitled to rely upon the vocational expert's response to the question.  Thus, the ALJ erred at step five.

III.    <u>THE REMEDY</u>

For all of the reasons stated above, I conclude that the ALJ's decision that Plaintiff is capable of performing full-time sedentary work is not supported by substantial evidence.  Thus, I must consider whether to remand to the Commissioner for further factfinding or simply to award benefits.  *See* 42 U.S.C. § 405(g)) ("The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing").

The Tenth Circuit has indicated that "'outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose.'"  *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quoting *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988) (further quotations omitted).  This reversal and remand for immediate award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied."  *Id.*

In this case, because the ALJ's finding that Plaintiff can perform sedentary work is not supported by substantial evidence, and because sedentary work  is the lowest classification under the statute, I find that there is no need for further proceedings in this matter other than a remand for an award of benefits.  *Sisco*, 10 F.3d at 746.  This is particularly true given that every treating physician opined that Plaintiff was unable to work and the ALJ did not identify substantial evidence in the record to the contrary.

Further, this case has a substantial history.  Plaintiff has been seeking benefits since March 2003, over six (6) years.  The case has already been remanded once to

the Commissioner.  On remand, the ALJ again failed to conduct adequate fact finding.

Further, he violated my remand order in that, among other things, he again

misconstrued the nature of CFS to require objective tests.  As noted in *Sisco*:

> The record reveals that the ALJ has resented Plaintiff's persistence,
> refused to take her disease seriously, and at times treated her claim with
> indifference or disrespect.  The [Commissioner] is not entitled to
> adjudicate a case '*ad infinitum* until it correctly applies the proper legal
> standard and gathers evidence to support its conclusion.'

*Id.*, 10 F.3d at 746 (quotation omitted).  Under these circumstances, I find that an

outright reversal and award of benefits is appropriate.  *See also Thaete v. Shalala*, 826

F. Supp. 1250, 1253 (D. Colo. 1993) (reversing and remanding for an award of benefits

after ALJ refused to properly consider the claimant's diagnosis of chronic fatigue

syndrome, claiming that it was not based on "significant medical findings"); *Vogt v.*

*Chater*, 958 F. Supp. 537, 547-48 (D. Kan. 1997).

IV.    CONCLUSION

In conclusion, it is

ORDERED that this case is **REVERSED**, and the case is **REMANDED** to the

Commissioner for an immediate award of benefits to Plaintiff.

Dated September 28, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge

-22-